IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00706-PAB-STV

MISTY KENNEDY,

    Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, d/b/a Briarwood,

    Defendant.

---

## ORDER

---

    This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 37] and Plaintiff's Motion for Leave to File a Sur-Reply Brief or Strike Defendant's New Matters in its Reply Brief [Docket No. 42].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.   Plaintiff Misty Kennedy asserts claims against defendant Life Care Center of America for disability discrimination, retaliation, and interference in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  Docket No. 22 at 4-11.  Defendant moves for summary judgment on all of plaintiff's claims.  Docket No. 37 at 2.  Plaintiff filed a response, Docket No. 39, and

defendant filed a reply.  Docket No. 45.[1]  Plaintiff filed a motion requesting leave to file a

sur-reply or to strike portions of defendant's reply.[2]  Docket No. 42.

## I. BACKGROUND[3]

In 1997, plaintiff began working for defendant as a certified nursing assistant.

Docket No. 37 at 2, ¶ 2.  In 2001, plaintiff became a certified licensed practical nurse

("LPN").  *Id.*, ¶ 1.  Defendant promoted plaintiff to the position of Admissions

Coordinator and then to Admissions Director at defendant's Western Hills Health Care

Center.  *Id.*, ¶ 3.  In May 2001, plaintiff stopped working for defendant.  *Id.*, ¶ 4.

In 2007, defendant rehired plaintiff as a restorative LPN at defendant's Briarwood

Health Care Center ("Briarwood"), *id.*, ¶ 5, in Denver, Colorado.  *See* Docket No. 22 at

2, ¶ 5.  Plaintiff's position required a nursing license.  Docket No. 37 at 2, ¶ 6.  Plaintiff

reported to the facility's executive director, Hollie Hoyle, and to the director of nursing,

Amy Wells.[4]  *Id.*, ¶ 7.

---

[1] Defendant's reply fails to follow the Court's Practice Standards, which require that a reply brief must "either admit that [a] fact is disputed or supply a **brief** factual explanation for its position that the fact is undisputed, accompanied by a **specific reference** to material in the record which establishes that the fact is undisputed."  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.vi. Defendant frequently fails to cite material in the record demonstrating that facts in plaintiff's statement of additional facts are undisputed.  *See, e.g.*, Docket No. 45 at 2, 4, ¶¶ 1-2, 5-6, 22-28, 32, 34-41.  To the extent defendant fails to demonstrate that a fact in question is undisputed, the Court will deem the fact to be admitted.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ix. ("Failure to follow these procedures . . . may cause the Court to deem certain facts as admitted.").

[2] Plaintiff's motion requesting leave to file a surreply argues that defendant makes new arguments that apply to her *prima facie* cases of disability discrimination and failure to make reasonable accommodations.  Docket No. 42 at 1-2.  Because the Court finds disputes of fact relating to plaintiff's *prima facie* cases, the Court need not reach the substance of plaintiff's motion for leave to file a surreply.

[3] The following facts are undisputed unless otherwise indicated.

[4] Amy Wells became the director of nursing in 2015.  Docket No. 37 at 2, ¶ 7.

On May 22, 2010, plaintiff was arrested while operating her vehicle under the influence of alcohol and was later convicted of driving while ability impaired. *Id.* at 3, ¶¶ 8-9.  Plaintiff disclosed her conviction to Peer Assistance Services ("PAS"), which provides "prevention and intervention services related to substance abuse, mental health disorders, and other issues that may interfere with the job performance of certain professionals in Colorado." *Id.*, ¶ 10 n.2.  On November 22, 2010, plaintiff took leave under the Family and Medical Leave Act "FMLA" to undergo a psychological evaluation and agreed to cease practice as an LPN. *Id.*, ¶¶ 11, 12.  On December 16, 2010, plaintiff returned to Briarwood in a non-nursing, administrative position pending permission from PAS to return to her position as a restorative LPN. *Id.*, ¶ 13.  On February 7, 2011, plaintiff entered into a practice agreement with PAS that allowed her to return to work as a nurse on February 8, 2011 as long as she complied with the practice agreement's obligations. *Id.*, ¶¶ 14-15.

In 2016, plaintiff notified Ms. Hoyle "she was 'drinking again,' was 'going to go to a rehab facility in Florida,' and 'need[ed] to take time off.'" *Id.* at 4, ¶ 17 (quoting Docket No. 37-1 at 145, 145:12-20).  On November 22, 2016, plaintiff took FMLA leave. *Id.*, ¶ 18.  On January 23, 2018, plaintiff was arrested for a domestic dispute while under the influence of alcohol. *Id.*, ¶ 19.  Plaintiff disclosed her arrest to Ms. Hoyle and PAS. *Id.*, ¶¶ 20-21.  On February 16, 2018, plaintiff entered into a new practice agreement with PAS. *Id.*, ¶ 23.

In April 2018, defendant eliminated the Restorative LPN position at Briarwood and plaintiff was promoted to LPN Unit Coordinator. *Id.*, ¶¶ 24-25.  Plaintiff's new position

required "an active [LPN] license in good standing throughout employment."  *Id.* at 5, ¶ 26 (quoting Docket No. 37-12 at 1).

On May 15, 2020, plaintiff submitted a urine analysis that was positive for alcohol. *Id.*, ¶ 32.  On May 21, 2020, PAS sent plaintiff a letter that ordered plaintiff to cease practice.  *Id.*  Under a cease practice order, she could not work as an LPN.  *Id.*, ¶ 33. On May 21, 2020, plaintiff informed Ms. Hoyle and Ms. Wells of the results of her urine analysis and of her cease practice order.  *Id.* at 2, ¶ 7.  The Director of Human Resources asked plaintiff not to come into work the next day.  *Id.* at 6, ¶ 35.

Nevertheless, the next day plaintiff went to Briarwood and met with Ms. Hoyle.  *Id.*, ¶¶ 36-37.  After the meeting, plaintiff went to her office, retrieved her belongings, and took them to her car.  *Id.*, ¶ 40.  On May 25, 2020, defendant issued plaintiff a check for her final wages.  *Id.* at 7, ¶ 44.  The Director of Human Resources called plaintiff and told her to pick up her last check on May 26, 2020.  *Id.*, ¶ 45.  On May 29, 2020, plaintiff returned to Briarwood and collected her final paycheck.  *Id.*, ¶ 46.  At that time, defendant formally terminated plaintiff.  *Id.*

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

Plaintiff brings claims under the ADA and Rehabilitation Act for disability discrimination, a failure to accommodate and wrongful termination, retaliation, and interference.  Docket No. 22 at 4-11.  Plaintiff alleges she was discriminated against because of her alcoholism, anxiety, and depression.  *Id.* at 4, ¶ 26.  Defendant moves for dismissal of all of plaintiff's claims.  Docket No. 37 at 2.

### A.  Discrimination

Plaintiff alleges she was discriminated against because of her alcoholism, depression, and anxiety in violation of the ADA and Rehabilitation Act when defendant refused to provide plaintiff with a reasonable accommodation and terminated plaintiff. Docket No. 22 at 5, 6, ¶¶ 28-30, 35-37.

To survive summary judgment on a disability discrimination claim, a plaintiff must raise a genuine issue of disputed fact for each element of a *prima facie* case. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021).  A *prima facie* case of discrimination has three elements: "'(1) [s]he was a disabled person as defined by the [ADA]; (2) [s]he was qualified, with or without reasonable accommodation, to perform the essential functions of h[er] job; and (3) [s]he was fired because of h[er] disability.'"  *Id.* (quoting *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015)); *see also McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (articulating four elements of a *prima facie* claim under the Rehabilitation Act: (1) the plaintiff is disabled under the Act; (2) the plaintiff would otherwise be qualified to participate in the program; (3) the program is a federal agency or receives federal financial assistance; and (4) the program has discriminated against plaintiff).  To show that plaintiff was terminated because of her disability, she may present direct or circumstantial evidence.  *Herrmann*, 21 F.4th at 678.

When a plaintiff does not present direct evidence of discrimination, a court applies the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate disability discrimination claims arising under the ADA and the Rehabilitation Act.  *See Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1192 (10th Cir.

2018) (applying framework to an ADA claim); *Cummings v. Norton*, 393 F.3d 1186, 1189 n.1 (10th Cir. 2005) (applying framework to a Rehabilitation Act claim).  The first step of that framework "requires the plaintiff to establish a prima facie case of discrimination."  *Lincoln*, 900 F.3d at 1192.  If this showing is made, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the adverse employment action.  *Id.* at 1193 (internal quotation marks omitted).  If the employer offers a legitimate nondiscriminatory justification, the plaintiff can prevail on her discrimination claim only by showing that the employer's stated reason for the employment action is pretext for discrimination.  *Id.*

Direct evidence of discriminatory animus shows without inference that plaintiff "was terminated because of her disability."  *Herrmann*, 21 F.4th at 678-79.  Direct evidence is rare.  *Id.*  In disability discrimination cases with direct evidence of discrimination, "*McDonnell Douglas's* 'burden-shifting framework may be unnecessary and inappropriate,'" *Hawkins*, 778 F.3d 877 at 883 (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 n.3 (10th Cir.1997)), and "plaintiff's status as a *qualified* individual with a disability becomes 'the determinative issue in the case.'"  *Id.* at 883 (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003)).  To demonstrate that she is a qualified individual, plaintiff must show (1) that her impairment prevented her from doing the essential functions of her job and (2) she could have been able to perform those essential functions with a reasonable accommodation.  *Id.* at 884.

Defendant does not state whether the Court should use the *McDonnell Douglas* burden shifting test or the test for direct evidence of discrimination for plaintiff's disability discrimination claims under the ADA and Rehabilitation Act.  *See* Docket No. 37 at 8.

Defendant, however, argues that plaintiff cannot show that the reason for termination was pretextual, *id.* at 18-19, presumably arguing that that test for circumstantial evidence should be used.  Plaintiff does not respond by arguing that she can show "direct evidence that she was terminated because of her disability," *Herrmann*, 21 F.4th at 679, and instead she argues that defendant's reasons for terminating plaintiff were pretextual and that the timing of her termination and threats by Hoyle and Wells in response to plaintiff's request for accommodation create "an inference of retaliation." Docket No. 39 at 18.  It is disputed whether plaintiff was terminated "because of her positive UA and [because] she couldn't perform her job duties."  *Id.* at 9, ¶ 54; Docket No. 45 at 5, ¶ 54.  "[T]he Rehabilitation Act does not protect alcoholics whose current use of alcohol prevents [them] from performing the duties of the job."  *Dennis v. Fitzsimons*, 850 F. App'x 598, 602 (10th Cir. 2021) (unpublished) (quotations omitted). Although plaintiff argues she was threatened with termination for requesting an accommodation, given that she does not present "affirmative evidence that [defendant] terminated Plaintiff *because* [s]he is an alcoholic," *id.*, plaintiff has not presented direct evidence of discrimination.  The Court will therefore evaluate her claims under the *McDonnell Douglas* burden shifting framework.

### 1. Prima Facie Case

Defendant argues that plaintiff cannot make out any of the three elements of *a prima facie* case of disability discrimination because she is not disabled, she was not qualified for her position, and she was not terminated or, if she was terminated, her termination was not motivated by discrimination.  Docket No. 37 at 8-15.

### a. Disability

First, defendant argues that plaintiff is not disabled.  *Id.* at 8.  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).[5]  To meet the first definition, "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities."  *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (quoting *Berry v. T–Mobile USA, Inc.,* 490 F.3d 1211, 1216 (10th Cir. 2007)).  A "major life activity" is a basic activity that the average person in the general population can perform with little or no difficulty.  *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1199 (D. Kan. 2006).  Major life activities as defined by the ADA are functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A); *see Poindexter v. Atchison*, 168 F.3d 1228, 1231 (10th Cir. 1999) (noting that the list provided by the ADA is merely illustrative).

Defendant argues that plaintiff was not substantially impaired in any major life activity based on alcoholism, anxiety, or depression.  Docket No. 37 at 9.  Defendant, however, does not identify any undisputed facts that show plaintiff is not disabled.  For example, none of defendant's statements of undisputed fact address plaintiff's lack of a

---

[5]  The Rehabilitation Act uses the ADA's definition of disability for employment discrimination cases.  *See McGeshick*, 357 F.3d at 1150.

disability. *See id.* at 1-7.  Instead, defendant cites to various portions of plaintiff's deposition testimony to support the argument that plaintiff's alcoholism did not substantially impair any of her major life activities and that depression and anxiety do not substantially impair any major life activities for plaintiff. *Id.* at 9-11.  While statements of a party opponent may constitute an admission, the fact that such statements are not included in the defendant's statement of undisputed facts violates the Court's Practice Standards. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i.[6]  For example, defendant notes that plaintiff testified that alcoholism does not interfere with her daily life when she is not drinking.  Docket No. 37 at 9 (citing Docket No. 37-1 at 259, 259:4-9).  Plaintiff claims that in May 2020 she made requests to defendant for accommodations, Docket No. 39 at 4, ¶¶ 9-11, and while neither plaintiff nor defendant is entirely clear whether plaintiff was drinking at those times, defendant points to no undisputed facts that she was not.  Moreover, defendant acknowledges a dispute over whether plaintiff's "alcohol use disorder substantially impairs her decision making and ability to meet basic needs when the condition is active." *Id.* at 3, ¶ 7; Docket No. 45 at 2, ¶ 7.  Although defendant identifies evidence that plaintiff's drinking does not always interfere with her major life activities, *see* Docket No. 37 at 9 (citing 37-1 at 259, 260, 264, 265, 259:4-9, 259:18-260:1, 260:6-8, 260:18-20, 264:22-25, 265:1-2), defendant has not identified undisputed facts that demonstrate plaintiff does not experience substantial impairment in major life activities

---

[6] The Court will also decline to consider defendant's arguments on plaintiff's depression and anxiety as defendant does not introduce any undisputed facts to support its argument that plaintiff is not disabled by depression or anxiety. *See* Docket No. 37 at 1-7.

at other times when drinking.  Defendant has not shown that it is undisputed that plaintiff is not disabled.[7]

### 2. Qualifications

Next, defendant argues plaintiff was unqualified for her position.  Docket No. 37 at 12-13.  Under the ADA, a "'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (quoting 42 U.S.C. § 12111(8)); *see also Mannan v. Colorado*, 841 F. App'x 61, 66 (10th Cir. 2020) (unpublished) (applying the same standard to a Rehabilitation Act claim).  Plaintiff "bears the burden of showing that she is able to perform the essential functions of her job, with or without reasonable accommodation."  *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (citation omitted).  To determine if an individual is qualified, first, the Court must ask whether the employee can perform the essential functions of the job, and second, if the employee cannot, the Court asks if any reasonable accommodation by the employer would enable the employee to perform the essential functions of the job.  *Adair*, 823 F.3d at 1307.

Defendant argues plaintiff was unqualified for the position of LPN Unit Director because the position required a valid nursing license and plaintiff did not have a valid license after receiving the cease practice letter on May 15, 2020.  Docket No. 37 at 12. It is undisputed plaintiff's position required an active LPN license in good standing.  *Id.*

---

[7] As defendant has not shown it is undisputed that plaintiff is not disabled, the Court does not reach defendant's argument that defendant did not regard plaintiff as disabled.  *See* Docket No. 39 at 11.

at 5, ¶ 26.  Therefore, plaintiff could not practice as an LPN.  *Id.*, ¶ 33.  Plaintiff does not argue that she could perform the essential functions of the job without a reasonable accommodation.  Docket No. 39 at 15-16.  Instead, plaintiff responds that defendant's argument fails for two reasons: first, because she could perform the essential functions of the LPN job with a reasonable accommodation, and second, because she was qualified for other positions for which she requested a transfer.  *Id.*

Plaintiff argues she was a "qualified individual" because she could perform the essential functions of her job if she had been granted a reasonable accommodation.  *Id.*  The Tenth Circuit has ruled that leave can be a reasonable accommodation for alcoholism.  *See Williams v. Widnall*, 79 F.3d 1003, 1006 (10th Cir. 1996).  Plaintiff states in her response that on May 5, May 12, May 18, and May 22, 2020 she asked defendant for leave, Docket No. 39 at 4, 5, ¶¶ 9-11, 15, but that defendant refused the accommodations.  *Id.* at 5, ¶¶ 17-21.  Defendant disputes these facts.  Docket No. 45 at 3-4, ¶¶ 17-21.  Thus, there are genuine disputes of material fact that preclude summary judgment on the issue of whether plaintiff was a qualified individual under the ADA and Rehabilitation Acts.[8]

Defendant argues in its reply that a request for an unspecified amount of leave is not a reasonable accommodation.  *Id.* at 6-7.  However, the amount of time that plaintiff requested is not an undisputed fact.[9]  Defendant has not identified any facts that

---

[8]  On the issue of whether defendant is entitled to summary judgment on plaintiff's failure to accommodate claim, plaintiff has the burden of making an initial showing that she made a request for a plausibly reasonable accommodation.  *See Punt v. Kelly Services*, 862 F.3d 1040, 1050 (10th Cir. 2017).

[9]  Plaintiff's statement of facts claims that plaintiff "told Wells and Hoyle that the cease practice order would be lifted when she had two clean UAs which might be in two weeks," Docket No. 39 at 5, ¶ 16, but the citation plaintiff provides does not support the

demonstrate plaintiff requested more leave than she was able to take through her available FMLA leave or any other facts to show that plaintiff did not make a reasonable request for an accommodation in order to allow plaintiff to perform the essential functions of her job.

Additionally, defendant does not argue that plaintiff was not qualified to work in the positions she requested to be transferred to.  *See* Docket No. 37 at 12-13.  And defendant concedes that it is disputed whether plaintiff requested a change to a position in housekeeping, dietary, or laundry at Briarwood.  Docket No. 39 at 4, ¶ 14; Docket No. 45 at 3, ¶ 14.  Thus, assuming that defendant challenges plaintiff's qualifications for non-nursing positions in its motion, genuine issues of disputed material facts preclude summary judgment on this issue.

### 3. Causation

Concerning the third step in making a *prima facie* case of discrimination, defendant argues that, even if plaintiff is disabled, she was not discriminated against on the basis of her disability.  Docket No. 37 at 13.  Defendant claims plaintiff did not suffer an adverse employment action because she resigned before she was terminated and that, even if she did not resign, she does not have affirmative evidence that disability was a determining factor in her termination.  *Id.* at 13-14.

In order to show that she was discriminated against on the basis of her disability, plaintiff must show that the discrimination resulted in an adverse employment action, such as termination.  *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039-40 (10th Cir.

---

statement.  Therefore, this statement does not establish a disputed material fact.  *See id.* (citing Docket No. 39-5 at 2-3, 61:21-62:2).

2011).  While a plaintiff's burden of establishing a *prima facie* case under the *McDonnell Douglas* framework is not "onerous," *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015), "it is also not empty or perfunctory."  *Vinez v. Sky Chefs, Inc.*, 658 F. App'x 390, 393 (10th Cir. 2016) (unpublished) (citation omitted).  This step "requires [a] plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision."  *Lincoln*, 900 F.3d at 1193 (emphasis and citation omitted).

Defendant has not identified any undisputed facts that show plaintiff resigned. Docket No. 37 at 13-14.  Defendant labels one section of its statement of facts "Plaintiff resigns from her position with LCCA," *id.* at 6, but does not allege that plaintiff resigned in any statements under that heading.  *See id.* at 6-7.  Moreover, defendant disputes plaintiff's statement of fact that defendant told her that she was being terminated because of her positive alcohol test and that she could not perform her job duties as a result.  Docket No. 39 at 9, ¶ 54; Docket No. 45 at 5, ¶ 54.  The Court finds that there are disputed issues of material fact that preclude summary judgment on the issue of whether plaintiff resigned.

Second, defendant argues that, even if plaintiff did not resign, she does not introduce any evidence that disability was a determining factor in defendant's decision because plaintiff was fired for misconduct, namely, failing a urine test.  Docket No. 37 at 14-15.  "[U]nsatisfactory conduct caused by alcoholism and illegal drug use does not receive protection under the ADA or the Rehabilitation Act.  However, the mere status of being an alcoholic or illegal drug user may merit such protection."  *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 609 (10th Cir. 1998).  A plaintiff who conflates misconduct

caused by alcoholism with a termination predicated on her status as an alcoholic cannot make out a claim for disability discrimination.  *See Dennis*, 850 F. App'x at 602.

Plaintiff responds that she has direct evidence of discrimination that a reasonable jury could use to find that defendant fired her due to her disability.  Docket No. 39 at 17-19.  Plaintiff informed defendant of her failed urine test on May 21, 2020.  Docket No. 37 at 5, ¶ 34.  Before defendant learned of plaintiff's failed urine test, plaintiff states that she requested time off on May 5, 2020, Docket No. 39 at 4, ¶ 9; Docket No. 45 at 2, ¶ 9, to which Hoyle responded by telling plaintiff that she would be fired if she filed for FMLA leave.  Docket No. 39 at 5, ¶ 17; Docket No. 45 at 3, ¶ 17.  Plaintiff states that she again requested leave on May 12, 2020, Docket No. 39 at 4, ¶ 10; Docket No. 45 at 2, ¶ 10, and Wells told plaintiff she may not have a job to come back to if she took FMLA leave. Docket No. 39 at 5, ¶ 18; Docket No. 45 at 3, ¶ 18.  Plaintiff states that she also requested leave on May 18, 2020, Docket No. 39 at 4, ¶ 11; Docket No. 45 at 2, ¶ 11, and Wells reminded plaintiff that she would not have a job to come back to if she took FMLA leave.  Docket No. 39 at 5 ¶ 19; Docket No. 45 at 3, ¶ 19.  After a meeting between Hoyle, Wells, and two Human Resources employees, Wells was told to prepare plaintiff's termination form, and Wells prepared the form on May 29, 2020. Docket No. 39 at 8, ¶¶ 48-49.  A reasonable jury could find that, when plaintiff requested an accommodation, animus toward this "protected activity was a 'but-for' cause of [defendant's] decision[ ]," *Lincoln*, 900 F.3d at 1210, to terminate plaintiff, thus creating a genuine dispute of material fact regarding defendant's motive.

Next, plaintiff states she requested FMLA leave on May 22, 2020, Docket No. 39 at 5, ¶ 15, and that Hoyle responded stating it was too late to request leave and that

plaintiff had to go home.  *Id.*, ¶ 21.  Defendant states that plaintiff fails to show causation based on her request for time off on May 22, 2020 because defendant granted plaintiff's request for accommodation, namely, it gave plaintiff time off on May 19, 2020.  Docket No. 45 at 4, 9, ¶ 21 (citing Docket No. 37-17).  Defendant, however, also states that it is disputed that the leave plaintiff requested was FMLA leave.  *Id.*, ¶ 15.  Evidence that defendant granted plaintiff personal leave on May 19, 2020 does not address plaintiff's allegations that she requested FMLA leave after defendant learned of her failed urine test.

The proximity between Hoyle and Wells' threats to plaintiff and her termination is sufficient evidence of a causal connection between plaintiff's accommodation requests and her termination.  *See Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) ("The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."); *Dennis*, 850 F. App'x at 602 ("Evidence of critical comments about a plaintiff's disability, . . . and taking adverse employment action may give rise to an inference of discrimination.").  The Court will deny defendant's motion for summary judgment based on plaintiff's disability discrimination claim.

### 4. Pretext

Defendant argues that, even if plaintiff can make out *prima facie* cases for her claims of discrimination, her claims fail because plaintiff cannot establish that the reason for her termination was pretextual.  Docket No. 37 at 18-19.  Defendant's proffered reason for plaintiff's termination is her failed urine analysis test and her lack of an active nursing license.  *Id.*  "A plaintiff demonstrates pretext by showing either that a discriminatory

reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1194 (10th Cir. 2016) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (brackets omitted)).  Such a showing requires a plaintiff to present "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could find those reasons unworthy of belief.  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

Plaintiff argues that the pretextual nature of defendant's claimed basis for her termination can be shown through the personnel action form that defendant completed in connection with her termination.  *See* Docket No. 39 at 18-19 and 8-9, ¶¶ 49-54. Specifically, plaintiff claims that the form indicates plaintiff is eligible for rehire, which is consistent with defendant's argument that plaintiff quit, but is inconsistent with what defendant told her on May 29, 2020, namely, that she was being terminated because of the positive urine test.  *Id.* at 9, ¶¶ 51, 54.

Plaintiff also argues that Hoyle and Wells' discriminatory threats before her suspension are evidence that defendant's proffered reason is pretextual.  Docket No. 39 at 18.  Plaintiff does not directly identify the ultimate decisionmakers in her termination. Even assuming it was not Hoyle or Wells and instead Human Resources, defendant admits that, after a meeting between Hoyle, Wells, and two Human Resources employees, Wells was directed to terminate plaintiff.  *Id.* at 8, ¶¶ 47-48; Docket No. 45 at 4, ¶¶ 47-48.  Defendant does not point to any undisputed facts to show that Hoyle

and Wells did not participate in plaintiff's termination or that the decision to terminate plaintiff was made based upon an independent investigation.  A reasonable jury could find that defendant's reason for terminating plaintiff was pretextual because of input from Hoyle and Wells whose animus "translated into discriminatory actions that caused [plaintiff's] termination."  *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 490 (10th Cir. 2006).  Accordingly, there are disputed issues of fact as to whether Hoyle and Wells' animus influenced the decision to terminate plaintiff.  The Court will decline to grant summary judgment on plaintiff's disability discrimination claims under the Rehabilitation Act and the ADA.

## B.  Failure to Accommodate

Defendant argues plaintiff cannot make out a *prima facie* case for her claims for failure to accommodate because plaintiff did not request any accommodations and, alternatively, any accommodation plaintiff requested was not reasonable.  Docket No. 37 at 15-16.  An employee asserting a failure-to-accommodate claim "must make an initial showing that (1) she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation."  *Punt*, 862 F.3d at 1050; *see Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1161 (10th Cir. 2014) (listing the same elements for accommodation claims under the Rehabilitation Act).  Failure-to-accommodate claims do not require a showing that the employer's actions were motivated by discriminatory animus, as "the failure to provide a reasonable accommodation to a qualified employee with a disability is inherently 'on the basis of the disability,' regardless of the employer's motivation."  *Punt*, 862 at 1048 (quoting 42 U.S.C.

§ 12112(a)).  A reasonable accommodation can include accommodating an individual in her position or "reassignment to a vacant position."  42 U.S.C. § 12111(9)(B).

As discussed above, plaintiff has shown disputes of fact on the question of whether she is disabled and whether she was qualified for her job.  Defendant argues plaintiff cannot make out the third element of her claim, that she requested a reasonable accommodation.  Docket No. 37 at 15-16.  Plaintiff states she made two types of requests for an accommodation: (1) she requested FMLA leave several times in May 2020 and (2) she requested to be transferred to other open positions.  Docket No. 39 at 16-17.

Defendant claims that plaintiff cannot show she requested an accommodation because her evidence is based on her "own self-serving testimony."  Docket No. 37 at 15.  The "self-serving" nature of plaintiff's testimony may influence the weight the jury gives such testimony, but does not justify the Court ignoring what is otherwise competent testimony given under oath.  *See Berry v. Chicago Transit Auth.,* 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'  If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts.  It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony; we leave those tasks to factfinders.") (internal citations omitted).

Next, defendant argues that plaintiff did not request FMLA leave until May 22, 2020.  Docket No. 37 at 15.  Even if plaintiff only requested leave on May 22, 2020, defendant does not explain why this prevents plaintiff's request from qualifying as a request for

accommodation.  As already noted, it is disputed whether plaintiff made requests for accommodation on May 5, 12, and 18, 2020.  Docket No. 39 at 4, ¶¶ 9-11; Docket No. 45 at 2, ¶¶ 9-11.

Finally, defendant argues that, because plaintiff did not state the length of time she needed off, her request for accommodation was not reasonable.  Docket No. 45 at 7.  Plaintiff states she requested two weeks off, but her statement of fact is unsupported by the record.  Docket No. 39 at 5, ¶ 16; *see* Docket No. 39-5 at 2-3, 61:21-62:2.  As noted earlier, there is no evidence of the length of leave plaintiff requested and therefore defendant fails to show that plaintiff requested an unreasonable and indefinite amount of leave.

Additionally, plaintiff states that, on May 22, 2020, she requested a transfer to housekeeping, dietary, or laundry in a position that did not require a nursing license.  Docket No. 39 at 4, ¶ 14.  Defendant disputes this statement, Docket No. 45 at 3, ¶ 14, and argues that no one at Briarwood had knowledge of any available positions at Briarwood at the time plaintiff requested a transfer and therefore defendant properly denied the request assuming that plaintiff made one.  *Id.* at 9.  In the case defendant cites, *Lara v. State Farm Fire Cas. Co.*, 121 F. App'x 796 (10th Cir. 2005) (unpublished), there was no evidence that a position was going to become available at the time plaintiff was terminated.  *Id.* at 803.  Here, plaintiff testified that she requested a transfer to housekeeping, dietary, and laundry.  Docket No. 39 at 4, ¶ 14 (citing Docket No. 39-5 at 11, 227:12-16).  Whether she really did make such a request or whether she learned of such openings only after filing this lawsuit are disputes for the jury to resolve.

The Court will decline to grant summary judgment on plaintiff's accommodation claims under the ADA and Rehabilitation Act.

### C.  Retaliation and Interference

Plaintiff brings claims of retaliation and interference under the Rehabilitation Act and the ADA based on defendant's interference with her request for reasonable accommodations and retaliation in response to her requests.  Docket No. 22 at 7-11, ¶¶ 40-61.  Defendant argues plaintiff's claims of retaliation and interference fail because plaintiff cannot establish a causal connection between a protected activity and her termination.  Docket No. 37 at 17-18.  The ADA prohibits retaliation based on a protected activity in Section 12203(a) and interference "with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter" in section 12203(b).  42 U.S.C. §§ 12203(a), (b).  The Tenth Circuit has ruled that a plaintiff pursuing a claim under either section must show "(1) that she engaged in protected activity; (2) that she suffered a materially adverse action . . . either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action."  *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010); *see also Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001) (applying the same elements in the evaluation of claim under 42 U.S.C § 12203(b)).  The same standard is applied to retaliation claims under the Rehabilitation Act.  *Dickman v. LaHood*, 600 F. App'x 611, 613 (10th Cir. 2015) (unpublished).  "A causal connection between a protected action and a subsequent

adverse action can be shown through evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *C.R. England, Inc.*, 644 F.3d at 1051 (internal quotation marks and citation omitted). Temporal proximity alone may sometimes be sufficient to establish causation. *See Foster*, 830 F.3d at 1191.

Defendant argues plaintiff cannot show her request for accommodation was a cause of her termination. Docket No. 37 at 17-18. For the reasons discussed above, the Court finds that the temporal proximity of (a) threats that Wells and Hoyle allegedly made and (b) plaintiff's termination is sufficient to show a causal connection for the third element of plaintiff's retaliation and interference claims. As a result, plaintiff's retaliation and interference claims survive summary judgment.[10]

### D. Punitive Damages

Defendant argues that plaintiff cannot recover punitive damages from defendant because plaintiff cannot show that defendant acted "with malice or with reckless indifference to [] plaintiff's federally protected rights." *Id.* at 19-20 (quoting *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1169 (10th Cir. 2006)).

The Supreme Court has recognized that the ADA imposes two standards of liability, one for compensatory damages and another "higher standard that a plaintiff must satisfy to qualify for a punitive award." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999). In order to sustain a claim for punitive damages, a plaintiff must show an

---

[10] Defendant claims its arguments on pretext also apply to plaintiff's retaliation and interference claims. Docket No. 37 at 18. For the same reasons plaintiff's discrimination claims survive summary judgment based on a showing of pretext, plaintiff's retaliation and interference claims also survive summary judgment.

employer "act[ed] with malice or with reckless indifference to the plaintiff's federally protected rights."  *Id.* at 535 (internal quotation and alterations omitted).  "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."  *Id.* at 536.  Where "(1) there is sufficient evidence for the jury to decide whether an employer intentionally and illegally discriminated on the basis of a disability and (2) there is evidence that the employer knew the requirements of the ADA, it is proper for a punitive damages instruction to go to the jury."  *Heartway Corp.*, 466 F.3d at 1169.

Defendant argues that plaintiff cannot show a broader failure of defendant to enforce its anti-discrimination procedures in order to show defendant can be held liable for discrimination against plaintiff.  Docket No. 37 at 20.  Plaintiff responds that her claim for punitive damages is supported by two pieces of evidence, first, defendant failed to train Hoyle on the requirements of the ADA and, second, Rhonda Candelarie, defendant's Human Resources employee at its regional office, participated in discussions on whether plaintiff should be terminated.  Docket No. 39 at 19-20.  There is sufficient evidence that defendant violated the law with at least reckless indifference for plaintiff's punitive damage claim to survive.  *See, e.g., Carter v. Pathfinder Energy*, 2012 WL 12977452, at *2 (D. Wyo. Oct. 12, 2012) (denying summary judgment on a punitive damages claim based on discriminatory conduct from a decisionmaker in plaintiff's termination); *Horsewood v. Kids R Us*, 27 F. Supp. 2d 1279, 1288 (D. Kan. Nov. 30, 1998) (denying summary judgment on a claim of punitive damages based on management's participation in discriminatory conduct).

Defendant also argues it can show good faith compliance to defeat plaintiff's claim for punitive damages.  Docket No. 37 at 19.  An employer can raise a defense of good faith compliance with the ADA to avoid punitive damages.  *Kolstad*, 527 U.S. at 544.  To show good faith compliance "an employer must at least 1) adopt antidiscrimination policies; 2) make a good faith effort to educate its employees about these policies and the statutory prohibitions; and 3) make good faith efforts to *enforce* an antidiscrimination policy."  *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006) (internal quotations and citation omitted).  "[T]he extent to which an employer has adopted antidiscrimination policies and educated its employees about the requirements of the ADA is important in deciding whether it is insulated from vicarious punitive liability."  *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1248 (10th Cir. 1999).

Defendant states it has anti-discrimination policies, regular trainings on those policies, and Rhonda Candelarie investigated plaintiff's complaint of bullying.  Docket No. 37 at 19-20.  The question of good faith compliance is decided by the jury if there are material issues of disputed fact.  *EEOC v. Pro. Bureau of Collections of Maryland, Inc.*, 686 F. Supp. 2d 1151, 1154 (D. Colo. 2010).  As movant, defendant must show an absence of disputed material facts, a burden which defendant has not met.  Defendant does not introduce any facts that demonstrate it "adopt[ed] antidiscrimination policies" or that it made "good faith efforts to enforce an antidiscrimination policy."  *McInnis*, 458 F.3d at 1138 (emphasis omitted).  Defendant's statement of undisputed facts does not reference any trainings or policies specific to disability discrimination.  *See* Docket No. 37 at 2-7, ¶¶ 1-46.  Accordingly, defendant has not met its burden of showing that it did not act with malice or reckless indifference to plaintiff's rights, and the Court will decline

to preclude plaintiff from making claims for punitive damages at the summary judgment stage.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 37] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply Brief or Strike Defendant's New Matters in its Reply Brief [Docket No. 42] is **DENIED as moot**.

DATED January 11, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge